IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

OFFICIAL PILLOWTEX LLC,      :
           :
        Plaintiff,        :    Case No. 06-CV-362
           :
    v.              :
           :    JUDGE MARBLEY
HOLLANDER HOME      :    Magistrate Judge King
FASHIONS CORP.,       :
           :
        Defendant.

## OPINION AND ORDER

## I.  INTRODUCTION

This matter is before the Court of Defendant Hollander Home Fashions Corp.'s ("Hollander") Motion to Dismiss Plaintiff's Complaint.  For the reasons stated herein, Defendant's Motion to Dismiss is **DENIED**.

## II.  FACTS

On October 7, 2003 Plaintiff Official Pillotex ("OP") purchased out of bankruptcy all of the intellectual property assets of Pillotex Corporation,[1] Fieldcrest Cannon, Inc. ("Fieldcrest"), and all of their subsidiaries.  These assets included six ROYAL VELVET trademarks (the "ROYAL VELVET marks") and two VELVET TOUCH trademarks (the "VELVET TOUCH marks").[2]  Plaintiff paid $128 million in exchange for these marks and other assets.  Plaintiff alleges that there is significant goodwill and other intangible value associated with these marks

---

[1]OP and Pillotex Corporation are not related entities.

[2]U.S. registrations Nos. 996,164 and 2,197,713 for the mark VELVET TOUCH.

-1-

because Pillotex Corporation and Fieldcrest employed them in commerce for the past forty years.

After acquiring these trademarks, Plaintiff entered into an exclusive license agreement with The Millwork Trading Co., Ltd. d/b/a Li & Fung USA ("Li & Fung") to market and sell products bearing these marks.  Less than two months after the execution of this license agreement, Plaintiff successfully began to market and distribute products bearing the six ROYAL VELVET marks.  Plainitiff and Li & Fung, however, were unable to put products bearing the VELVET TOUCH marks back into the market "before certain papers were due at the United States Patent and Trademark Office" ("USPTO").  As a result, the VELVET TOUCH registrations were cancelled.  In October of 2004, immediately following the VELVET TOUCH marks' cancellations, Plaintiff filed intent-to-use applications seeking to re-register the two VELVET TOUCH marks which it acquired from Fieldcrest.  To date, Plaintiff has not reintroduced products bearing the VELVET TOUCH marks into the stream of commerce.

Plaintiff alleges that Defendant has advertised and sold bedding products bearing the VELVET TOUCH marks in question at Wal-Mart stores throughout the United States.  Plaintiff asserts that Defendant's sale of products containing the VELVET TOUCH marks infringes on Plaintiff's rights in these marks.  It sent Defendant a cease and desist letter requesting that Defendant halt the marketing and sale of products bearing the VELVET TOUCH symbol. Defendant did not cease such activities.

Defendant retorts that it has sold bedding products bearing the VELVET TOUCH mark since 1989 and has developed extensive goodwill in association with this mark.  On February 7, 2006, Defendant filed an application to register its VELVET TOUCH mark with the USPTO based on its use of the mark.  It alleges that its rights in these marks are paramount to any which

-2-

Plaintiff purports to possess.

In its complaint, Plaintiff states three claims for relief.  In Count I, Plaintiff alleges that Defendant's sale of products containing the VELVET TOUCH mark violates Section 1125 (a) of the Lanham Act by creating a false designation of origin.[3]  In Count II, Plaintiff further asserts that Defendant's actions violated the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq*.  In Count III, Plaintiff claims that Defendant allegedly infringing actions constituted violations of Ohio state common law trademark infringement, unfair competition, and passing off.

Plaintiff states that this Court has subject matter jurisdiction over Count I under 28 U.S.C. §§ 1331 and 1338(a).  The federal question jurisdiction statute, 28 U.S.C. § 1331, states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1338(a) states, in relevant part, that "the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."  Plaintiff contends that this Court has jurisdiction over Plaintiff's state law claims, which are contained in Counts II and II of the complaint, under 28 U.S.C. §§ 1367(a) and 1338(b).  The supplemental

---

[3] 15 U.S.C. §1125(a) states that: "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which– (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

jurisdiction statute, 28 U.S.C. § 1367(a), states, in relevant part, that ". . . the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1338(b) states that "the district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."

### III.  Standard of Review

### A.  Fed. R. Civ. Pro. 12(b)(1)

Before determining whether a plaintiff has failed to state a claim upon which relief may be granted, the Court must first decide whether it has subject matter jurisdiction.  *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 975 (S.D. Ohio 1993) *(citing Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990)).

"When "subject matter jurisdiction is challenged under Rule 12(b)(1), . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).  In the context of a Rule 12(b)(1) motion, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).  A Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim.

### B.  Fed. R. Civ. P. 12(b)(6)

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action.  *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (*quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).  This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein."  *Conley*, 355 U.S. at 45-46.  While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994).  While liberal, this standard of review does require more than the bare assertion of legal conclusions.  *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993).  A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory.  *Scheid v. Fanny Candy Shop Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).

## IV.  LAW and ANALYSIS

### A. Summary of the Arguments

Defendant moves to dismiss the complaint for three reasons.  First, under Fed. R. Civ. P. 12(b)(1), Defendant contends that Plaintiff has not put forth enough evidence to show that this Court has subject matter jurisdiction over the allegations in the complaint.  Second, Defendant

alleges that Plaintiff does not have constitutional standing to bring this suit. Third, under Fed. R. Civ. P. 12(b)(6), Defendant asserts that Plaintiff's complaint fails to state a claim upon which relief may be granted.

### 1.) Defendant's Arguments

### a.) Subject Matter Jurisdiction

Behind all three of Defendant's reasons, as stated in its original motion to dismiss, is its assertion that Plaintiff lacks enforceable rights in the VELVET TOUCH marks because the marks are no longer registered and Plaintiff has not used the marks in commerce.

The right to a particular mark grows out of the mark's actual use.[4]  *See, e.g., Homeowners Group v. Home Mktg. Specialists*, 931 F.2d 1100, 1104 (6th Cir. 1991).  ("It is elementary that service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market.")  The mere filing of an intent-to-use applications, in and of itself, does not confer enforceable rights in a particular mark.  *See, e.g., Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 232 (E.D. Va. 2001) (finding the filing of an intent-use application "confers no right on defendant[s] to exclude others from using a mark merely because an intent-to-use application has been filed. Such a filing establishes only a constructive use of the mark which, upon registration, has the same legal effect as actual use of a trademark at common law."); *Fila v. Diadora*, 141 F.R.D. 74 (N.D. Ill. 1991).

---

[4]A valid trademark registration is prima facie evidence of its use unless Defendant can show that Plaintiff abandoned the mark.  *Homeowners*, 931 F.2d at 1105 ("while registration of a service mark is not dispositive on the question, it is at least prima facie evidence of the registrant's ownership and exclusive right to use of a mark.")

Because Plaintiff neither has a valid registration for the marks nor alleges that it has used the marks in commerce, Defendant contends that Plaintiff has no enforceable rights in the VELVET TOUCH marks.  Defendant alleges that because Plaintiff does not have any enforceable rights in the marks, Plaintiff does not have a claim that arises under the Lanham Act and as a result, subject matter jurisdiction over Count I is absent.

Moreover, Defendant contends that the Lanham Act is inapplicable because Plaintiff cannot make a *prima facie* cause for false designation of origin.  A claim for false designation of origin arising under Section 43(a) of the Lanham Act must contain two elements: (1) the false designation must have a substantial effect on interstate commerce; and (2) the false designation must create a likelihood of confusion.  *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). Defendant argues that because Plaintiff has not used the VELVET TOUCH marks in commerce, it cannot state a *prima facie* case for false designation.  Defendant asserts that because Plaintiff cannot make  a *prima facie* case under the Lanham Act, this Court does not have jurisdiction under 28 U.S.C. §§ 1331 or 1338(a).

### b.) Standing

Defendant also asks this Court to dismiss Plaintiff's complaint because Plaintiff does not have constitutional standing to bring a claim under the Lanham Act.  In order to have constitutional standing, Article III of the Constitution dictates that a Plaintiff must show that: (1) he has suffered or will imminently suffer an injury; (2) the injury is fairly traceable to the defendant's conduct; and (3) the court can redress the plaintiff's injury.  *Lujan v. Defenders of Wildlife*, 505 U.S. 555, 560-61 (1992).  Defendant asserts that because Plaintiff does not have enforceable rights in the VELVET TOUCH marks, it cannot possibly be injured by Defendant's

use of the marks.  Defendant, therefore, contends that Plaintiff lacks standing to bring this action

before the Court because it cannot satisfy the first prong of the *Lujan* test.

### 3.)  Failure to State a Claim

Defendant further moves to dimiss the complaint for failure to state a claim upon which

relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant delineates two rationale as

to why it alleges that Plaintiff has failed to state a claim under the Lanham Act.  First, because

Plaintiff does not use the VELVET TOUCH marks, Defendant contends that there cannot be a

likelihood of confusion between Defendant's and Plaintiff's marks.  Consequently, Defendant

asserts that Plaintiff fails to meet the second prong of the *Johnson v. Jones* criteria.  Defendant

thus argues that Plaintiff cannot sustain a claim for false designation of origin.  Second,

Defendant argues that because Plaintiff's complaint omits specific recitations that Defendant's

use of the VELVET TOUCH marks "creates a likelihood of confusion" among consumers and

"has a substantial effect on interstate commerce," Plaintiff cannot state a cognizable claim under

the Lanham Act.  Finally, Plaintiff asserts that Plaintiff does not proffer any facts to prove that

the VELVET TOUCH marks have a substantial effect on interstate commerce or that

Defendant's use of the marks is likely to create a substantial likelihood of confusion among

consumers.

### 4.)  State Law Claims

Finally, Defendant asserts that because this Court must dismiss Plaintiff's Lanham Act

claim, it lacks subject matter jurisdiction over Plaintiff's remaining state law claims under either

28 U.S.C. §§ 1367(a) or 1338(b).  Normally, even if a court dismisses all Plaintiff's federal

claims, it still may exercise jurisdiction over pendent state law claims pursuant to 28 U.S.C. §§

1367(a). *Arbaugh v. Y&H Corp.*, 126 S.Ct.1235, 1243-44 (2006).  If the underlying federal claim is dismissed for lack of subject matter jurisdiction, however, the court has no discretion to retain the pendent state law claims. *Id.*  Defendant also contends that Plaintiff does not assert any state law claims upon which relief can be granted for the same reasons that it alleges that Plaintiff cannot sustain its Lanham Act claim.

**2.)  Plaintiff's Arguments Regarding Subject Matter Jurisdiction, Standing, and Failure to State a Claim**

Plaintiff asserts that it obtained enforceable rights in the VELVET TOUCH marks from Fieldcrest, and as a result, Defendant's arguments fail — this Court has subject matter jurisdiction, Plaintiff has standing, and Plaintiff has stated claims upon which relief may be granted.  The purpose of a trademark is to represent and protect the goodwill of a business. *Merry Hull & Co. v. Hi-Line Co.*, 243 45, 50 (S.D.N.Y. 1965) (citations omitted).  A right in a given trademark is "created by its adoption and use in connection with that business. . . that is not to say that goodwill can exist only in connection with an active going business . . ." nor that goodwill cannot be transferred in a bankruptcy sale. *Id.*  Plaintiff alleges that it purchased the goodwill of Fieldcrest, in the form of its trademarks, in an October 2003 bankruptcy proceeding. Plaintiff does not contend that it has enforceable rights in these trademarks because it used them or because it filed intent to use applications to re-register them.  Instead, Plaintiff contends that the purchase of the VELVET TOUCH marks from Fieldcrest, who allegedly had enforceable rights in them, combined with Plaintiff's best efforts to put the marks back into circulation — hiring Li & Fung and filing intent to use applications — gives Plaintiff enforceable rights in these marks.

-9-

Plaintiff relies on *Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053 (2d Cir. 1985), the leading case on this issue. In *Defiance*, a button machine company referred to as Defiance-NY, manufactured buttons and button associated products starting in 1886. *Id.* at 1056. In June in 1982, Defiance-NY was declared to be default of a loan, and a company named C&C purchased all of Defiance-NY's physical assets at auction. Defiance-NY retained ownership of its intangible assets, specifically its trademarks, trade name, and goodwill. *Id.* In May of 1984[5], nearly two years after Defiance-NY became defunct, a company named Handy purchased the remaining stock, and along with it the intangible assets, of Defiance-NY. *Id.* at 1057. In September of 1982, however, C&C began operating using a similar trade to Defiance-NY (referred to as "Defiance-NJ") and employing labels similar to that of Defiance-NY. *Id.* Defiance-NY brought suit under the Lanham Act against Defiance-NJ seeking, among other things, injunctive relief and damages based on Defiance-NJ's alleged infringement of Defiance-NY's intellectual property. *Id.* Prior to the Second Circuit's decision in April 1985, neither Defiance-NY nor Handy put the trademark or trade name back into use. The Second Circuit found that this issue turned on whether Defiance-NY retained enforceable rights in its trademarks and trade names even after it sold its assets and ceased operations. The Second Circuit held that as long as Defiance-NY did not abandon its trade name or trademark, it still retained enforceable rights in them.

The Lanham Act's abandonment statute, 15 U.S.C. § 1127, states:

A mark shall be deemed to be "abandoned" if either of the following occurs:

---

[5]Handy's made its initial purchase offer in December of 1982, but for various reasons, the sale could not be consummated until 1984.

-10-

(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3[6] consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

Using this framework, the Second Circuit held that Defiance-NY did not intend to abandon its trademark and, as a result, could still enforce its rights in it against C&C. *Id.* at 1060. (holding that a mark is preserved "so long as (a) the goodwill of the concern has not wholly dissipated, (b) the owner or its assignee retains the intent to produce or market within a reasonable time a product or service substantially the same in nature and quality as that with which the trademark has been associated, and (c) such resumption of operations occurs within a reasonable time under the circumstances.") The court found that Defiance-NY's actions evinced its intent to resume use of their mark because: (1) it explicitly reserved the rights to its intangible assets when it sold its physical assets to C&C; (2) immediately thereafter, it sought to sell its trademark and trade name; and (3) it sold its mark to a company that produced a substantially similar product.[7] *Id.* at 1060-61.

In the case *sub judice*, Plaintiff argues that it meets the three-prong test outlined in

---

[6]At the time of the *Defiance* decision, two years was the relevant time period.

[7]The Court's decision, however, was "without prejudice to the injunctions being vacated upon the defendants' successfully shouldering the burden of showing that Defiance-NY has not resumed use of the mark and name in connection with sale of buttons and parts of substantially the same quality within a reasonable time." *Defiance*, 759 F.2d at 1063.

*Defiance*.  Plaintiff purchased the intellectual property assets of Fieldcrest, which Plaintiff alleges had enforceable rights in the marks due to the fact that Fieldcrest had registrations for these marks and used them in commerce for over forty years.  Upon receiving the assets, it immediately sought a licensee to supply products bearing the VELVET TOUCH mark.  When the marks' registration lapsed, Plaintiff  immediately filed intent-to-use applications.  Plaintiff further argues that it plans to introduce a similar bedding products to that of Fieldcrest bearing VELVET TOUCH mark as indicated by the fact that it has put out similar bedding products bearing the ROYAL VELVET marks.  In summary, Plaintiff argues that it purchased enforceable trademarks rights from Fieldcrest, took actions which indicated that it had not abandoned these marks, and as a result, Plaintiff contends that it has retained enforceable rights in these marks. As a consequence of having enforceable rights in the VELVET TOUCH marks, Plaintiff urges this Court to reject Defendant's arguments.

### 3.) Defendant's Reply to Plaintiff's "*Defiance*" Argument

Defendant retorts that it is not arguing that Plainitiff abandoned the VELVET TOUCH marks.  Instead, for the first time in its reply brief, Defendant contends that Fieldcrest abandoned the marks.  Defendant asks this Court to infer from the fact that Plaintiff did not specifically allege in its complaint that Fieldcrest used the mark, and from the fact that the mark was cancelled shortly after Plaintiff's purchase, that Fieldcrest abandoned the mark.  Thus, Defendant asserts that Plaintiff has failed to show that Fieldcrest had enforceable rights in these marks.  The burden of proving subject matter jurisdiction is on the Plaintiff.  *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).  In deciding a motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court may weigh the evidence and

need not attach any presumptive truthfulness to a Plaintiff's allegations.  *RMI Titanium Co. v. Westinghouse Elec Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Defendant argues that by failing to prove that Fieldcrest had enforceable rights in the VELVET TOUCH mark, Plaintiff has failed to meets its burden of showing that this Court has subject matter jurisdiction.  As a result, Defendant asserts that Plaintiff's claims must be dismissed.

### B.  This Court Has Subject Matter Jurisdiction Over This Action

Both Parties misconstrue the meaning of subject matter jurisdiction as it applies under the Lanham Act.  The Parties make a common mistake: "subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief — a merits-related determination." *Arbaugh v. Y&H Corp.*, 126 S.Ct.1235 (2006).  In essence, litigants often make Fed. R. Civ. P. 12(b)(1) motions for lack of subject matter jurisdiction when in reality they are arguing, or should argue, that the Plaintiff has failed to state an element of his claim, which should properly be addressed by a Fed. R. Civ. P. 12(b)(6) motion.  *Id.*

This, however, is not always the case.  The Supreme Court in *Arbaugh v. Y&H Corp.*, 126 S.Ct.1235 (2006) delineated the analytical framework for deciding whether a particular element is part of a plaintiff's claim for relief or a jurisdictional requirement.  In federal question cases, a Plaintiff properly invokes the subject matter jurisdiction of a federal court under Section 1331 when he "pleads a "colorable claim under 'arising under" the Federal Constitution or laws." *Id.* (citations omitted).  If the plaintiff's federal claim also arises under a federal law with a specific jurisdictional grant, the court must examine Congress' intent in establishing the specific element in question to see if it is jurisdictional in nature.

In *Arbaugh*, an employee of a restaurant that employed fourteen people brought suit against her employer for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).  After the plaintitiff won at trial, the defendant moved to dimiss the case for lack of subject matter jurisdiction because Title VII limits employers who can be sued under Title VII to those who employee fifteen or more persons.  *See* 42 U.S.C. § 2000e(b).  The Supreme Court found that in addition to Section 1331, 42 U.S.C. § 2000e-5(f)(3)[8] also specifically granted subject matter jurisdiction over Title VII claims to the federal courts.  Given that Title VII itself presented a jurisdictional basis for the plaintiff to bring her action in federal court, the Supreme Court found it necessary to decide whether the fifteen-or-more employee rule delineated in 42 U.S.C. § 2000e(b) was jurisdictional in nature or merely an element of the merits of the claim itself.  *Id.* at 1238.  The Court's analysis turned on the Congressional intent of the requirement. *Id.* at 1238.  It found that Congress could have expressly made the numerosity requirement jurisdictional in nature. *Id.*  It did not.  The Supreme Court held that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."  *Id.* at 1245.  Thus, the Supreme Court held

---

[8]"Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

that the numerosity requirement of Title VII is an element of a plaintiff's claim and not a jurisdictional requirement. *Id.*

To the extent that Defendant is arguing that this Court lacks jurisdiction because Plaintiff cannot make a *prima facie* case for a Lanham Act violation, Plaintiff's argument is misdirected. If a plaintiff fails to make out the elements of his claim, the proper vehicle for dismissing the complaint is a 12(b)(6) motion; subject matter jurisdiction is irrelevant to the analysis. To the extent that Plaintiff is arguing that having enforceable rights in the trademark in question is a jurisdictional element of a Lanham Act claim, *Arbaugh* controls the issue.

Aside from Section 1331, Section 1338(a) also contains a jurisdictional basis for federal courts to hear trademark infringement cases. Congress' separate jurisdictional grant evinces its intent to provide a federal forum for intellectual property cases absent other factors that might impede a plaintiff's ability to sue in federal court, such as Section 1331's previous amount-in-controversy requirement. *See, e.g., id.* at 1239. Defendant's argument that Plainitiff must have enforceable rights in the VELVET TOUCH marks in order for this Court to have subject matter jurisdiction over this action is incorrect. Congress did not specifically create a statutory requirement that Plainitiff have enforceable rights in a mark in order for it to bring a suit under the Lanham Act. The fact that Defendant neglects to cite the statute that directly states that a Plainitiff must have these rights in order for a federal court to have jurisdiction illustrates this fact. Thus, subject matter jurisdiction is proper under Section 1331 alone. The Court realizes, however, that the common law requires that Plainitiff have enforceable rights to sustain a Lanham Act claim, and also that if a Plaintiff does not have such rights, his suit under 15 U.S.C.A. § 1125 would fail because he would not be able to prove injury and other elements

-15-

contained in the statute. These, however, are not jurisdictional issues. There is no evidence that Congress intended for the "enforceable rights" requirement to be jurisdictional. Thus, under *Arbaugh*, this Court must this requirement as an element of the claim, rather than a jurisdictional prerequisite. Consequently, Defendant's Motion to Dimiss for lack of subject matter jurisdiction is **DENIED**.

### C.  Plaintiff Has Stated a Claim Upon Which Relief May Be Granted

Defendant first argues that Defendant cannot survive a 12(b)(6) motion because it does not have enforceable rights in the VELVET TOUCH marks. This court, and Defendant itself, finds the *Defiance* case persuasive on the issue of whether enforceable rights in intangible intellectual property may be purchased out of bankruptcy. Furthermore, the Court finds merit in Plaintiff's aforementioned argument that it has not abandoned the VELVET TOUCH marks it purchased from Fieldcrest. Thus, as Defendant correctly states it its reply brief, the issue turns on whether Fieldcrest had enforceable rights in the marks which it could sell to Plaintiff. Defendant argues that it did not.

Defendant urges this Court to infer from the fact that Fieldcrest became defunct and from the fact that the VELVET TOUCH marks' registration lapsed, that Fieldcrest had not used/abandoned the marks. This Court, however, must view all facts in the light most favorable to the Plaintiff. *Conley*, 355 U.S. at 45-46.

Viewing the facts that Plaintiff alleges in its complaint through this lens, Plaintiff has offered adequate support to show that Fieldcrest may have had enforceable rights in the VELVET TOUCH marks. First, Plaintiff paid a substantial sum of money to purchase these rights out of bankruptcy. It is unlikely that a sophisticated corporate entity would pay money for

-16-

rights that were defunct.  Moreover, it is unlikely that bankruptcy court would allow the sale of items with no value.  Second, the registrations on the VELVET TOUCH marks were still valid at the time of purchase.  Third, Plaintiff's attempts to re-register the marks and have its licensee put products bearing the marks back into the stream of commerce show that Plaintiff purchased the marks with the belief that they would be saleable.

Defendant also moves to dimiss Plaintiff's Lanham Act claim pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's complaint omits both a recitation of, and any factual support of, the two elements necessary to sustain a false designation claim: (1) the alleged false designation had a substantial effect on interstate commerce; or (2) the alleged false designation created a likelihood of confusion among consumers.  Defendant's argument is without merit.  First, a recitation of each element of a claim is not necessary in a notice pleading system.  A plaintiff's allegations simply must put a defendant on notice about that of which plaintiff accuses him.  *See, e.g., Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  Thus, Plaintiff's failure to recite specifically in its complaint that the facts support these two elements of a false designation claim does not, in and of itself, void Plaintiff's Lanham Act claim.  Plaintiff, in Count I, clearly states that the factual allegation in the complaint supported a charge under 15 U.S.C. §1125(a), thereby putting Defendant on notice of the charges.  Second, this Court may infer from the facts in the complaint that: (1) the use or false designation of the marks had a substantial effect on interstate; and (2) Defendant's use of the mark was likely to cause confusion among customers.  *See Scheid v. Fanny Candy Shop Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (holding that a complaint must contain either direct or *inferential* allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory) (emphasis added).

Several facts in Plaintiff's complaint illustrate that the infringement of the VELVET TOUCH marks could have a substantial effect on interstate commerce. Fieldcrest, OP, and Hollander are also national companies, selling or having sold their products in multiple states. Defendant itself sells products bearing the VELVET TOUCH mark at Wal-Mart stores, a multi-national chain. The rights to this mark cost Plaintiff a substantial sum of money to purchase, indicating that the worth of the mark, in interstate commerce and otherwise, has substantial monetary value. The Parties' factual allegations indicate that consumers may likely be confused by Defendant's use of the VELVET TOUCH mark. A likelihood of confusion exists when "relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group v. Home Mktg. Specialists*, 931 F.2d 1100, 1107 (6th Cir. 1991). Defendant admits that they are using the exact same VELVET TOUCH mark which Fieldcrest had registered, and Plaintiff currently claims enforceable rights in. Had Fieldcrest in fact been placing bedding items in the marketplace bearing this mark, Defendant's use of the same mark would likely, if not inevitably, create confusion among consumers as to the owner or manufacturer of the products, thus infringing on the rights Plaintiff purchased from Fieldcrest. For these reasons, Defendant's 12(b)(6) Motion is **DENIED**.

### D. Plaintiff Has Standing to Bring Suit

Defendant also argues that because Plaintiff does not have enforceable rights in the VELVET TOUCH marks, it cannot satisfy the first prong of the *Lujan* standing test, that Plaintiff suffer an actual or imminent injury. As the Court held above, Plaintiff has proffered enough evidence that Fieldcrest and OP had enforceable rights in the VELVET TOUCH marks to survive a motion to dimiss for failure to state a claim. If the Plaintiff has enforceable rights in

-18-

the marks, Defendant's sale of similar goods bearing the same mark could cause severe economic harm to Plaintiff, thus injuring it. For this reason, Plaintiff has satisfied its burden of showing that it has been personally injured. This Court, therefore, **DENIES** Defendant's Motion to Dimiss for lack of standing.

### E. Plaintiff's State Law Claims

Defendant alleges that because this Court does not have subject matter jurisdiction over Plaintiff's Lanham Act claim, that it does not have pendent jurisdiction over Plaintiff's state law claims. This Court has already held that it has subject matter jurisdiction over Plaintiff's Lanham Act claim. Thus, this argument in moot.

Defendant also argues that Plaintiff's state law claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the same reasons as its Lanham Act claim should be dismissed. As discussed above, Plaintiff has sufficiently alleged the elements of a Lanham Act claim and has shown, for the purposes of this Motion to Dismiss, that it may have enforceable rights in the VELVET TOUCH marks. For the same reasons, Defendant's Motion to Dismiss Plaintiff's state law claims for failure to state a claim is **DENIED**.

## V.  CONCLUSION

For the foregoing reason, Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**


    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: March 26, 2007**